1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

NORTHERN DISTRICT OF CALIFORNIA

10

San Francisco Division

11

MIGUEL MENDOZA,

Case No. 19-cv-02491-LB

12

Plaintiff,

13

v.

**ORDER GRANTING IN PART AND DISMISSING IN PART DEFENDANT'S MOTION TO DISMISS**

14

BANK OF AMERICA CORPORATION,

15

Defendant.

Re: ECF No. 39

16
17

**INTRODUCTION**

18

Plaintiff Miguel Mendoza brings this putative class action for wage-and-hour violations

19

against his former employer Bank of America Corporation. Mr. Mendoza brings seven claims:

20

    1. a claim under California Labor Code §§ 512, 226.7, and Industrial Welfare Commission

21

    Wage Order No. 4 § 11 for failure to provide compliant meal breaks;

22

    2. a claim under California Labor Code §§ 226.7, 512, and IWC Wage Order No. 4 § 12

23

    for failure to provide adequate rest breaks;

24

    3. a claim under California Labor Code §§ 1194, 1197, and IWC Wage Order No. 4 § 4 for

25

    failure to pay minimum wage;

26

    4. a claim under California Labor Code §§ 510, 1194, 1198, and IWC Wage Order No. 4 §

27

    3 for failure to pay overtime;

28

1   5. a claim under California Labor Code § 203 for failure to pay all wages due upon

2   discharge;

3   6. a claim under California Labor Code § 2802 for failure to reimburse for business

4   expenses; and

5   7. a claim under California's Unfair Competition Law ("UCL"), Business and Professions

6   Code § 17200) based on his minimum wage, overtime, meal-break, and rest-period claims.

7   Bank of America moves to dismiss claims one through seven on the grounds that Mr.

8   Mendoza does not actually plead any instances when he was deprived of minimum wage or

9   overtime pay, or where he requested, and was denied, reimbursement for business expenses.[1] It

10  also moved to dismiss because the alleged violations occurred outside of the relevant statute of

11  limitations.[2] The court grants Bank of America's motion, dismisses claims one through five, and

12  denies the motion to dismiss for claims six and seven. The court grants Mr. Mendoza leave to

13  amend.

14  ## STATEMENT[3]

15  Mr. Mendoza worked as an operations manager at a Bank of American branch in California,

16  from September 2015 to January 2017.[4] Mr. Mendoza alleges:

17  > . . . . Bank of America's systematic course of uniform payroll policies and practices
18  > [ ] violate the California Labor Code, Industrial Welfare Commission [ ] Wage Order
    > No. 4, California Code of Regulations , and California Business and Professions
19  > Code section 17200. Specifically, Bank of America intentionally and wrongfully
    > requires its operations managers to remain on duty for meal and rest periods by
20  > requiring them to remain on the premises, and often fails to provide its operations
    > managers with an otherwise off duty, uninterrupted, 30-minute meal period within
21  > the first five hours of their shifts, an uninterrupted 10-minute rest period for every
    > four hours (or major fraction thereof) of work, and fails to pay employees the
22  > resulting vested one additional hour of pay at the employees' regular rate of
    > compensation for each workday that the meal or rest period was not provided.
23

24  ---

25  [1] Mot. – ECF No. 30 at 9–10. Citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

26  [2] *Id.* at 10.

27  [3] Unless otherwise noted, the facts recited in the Statement are allegations from the First Amended Complaint ("FAC").

28  [4] FAC – ECF No. 18-1 at 5 (¶¶ 8–9).

. . . .

. . . . Plaintiff and the Class were not relieved of all duty during their meal periods and were, therefore, forced to remain "on duty." Further, no on-the-job meal period was agreed to in writing. Plaintiff and the Class were therefore entitled to be, but were not, paid at their regular rate of pay for all "on duty" meal periods. Thus, Plaintiff and Class are due compensation for all hours worked during their meal periods, including minimum wages and overtime wages owed.

. . . .

. . . . Plaintiff and the Class were required to remain in the bank during their meal (and rest) periods, therefore, the meal periods should have been paid, but were not paid. A compliant, timely meal period was not provided. Wages for all hours worked during their meal periods, including all minimum wages and overtime wages, are, therefore, due.[5]

The plaintiff's shifts averaged eight to nine hours, which entitled him to a meal period of at least thirty minutes and a rest period.[6] The plaintiff alleges that he and members of the purported class were not permitted to take breaks, uninterrupted meals, or rest periods because they remained on call and/or were required to remain on the premises unless they secured a written agreement authorizing on-the-job paid meals or rest periods.[7] He alleges that he and the putative class "regularly worked more than eight hours a day and/or 40 hours in a workweek in that they were required to work during their meal periods and were not compensated for such hours worked.[8] The plaintiff alleges that:

For example, Plaintiff's managers told him that he is a manager, and that he is to take his breaks and lunch on the bank premises in order to provide assistance to other bank employees and to complete his work duties, or words to that effect. As a result, Plaintiff's meal periods were interrupted because Defendants expected Plaintiff to perform various duties, including, but not limited to, the following: overrides/approvals; perform dual control; review teller transactions; provide his keys/combinations for employees to access negotiables, safe deposit boxes, and other similar items that required keys/combinations; and to respond to customer inquiries, among other duties.

On or about December 17, 2015, Plaintiff contacted Defendants' Human Resources ("HR") department and notified HR that his meal periods were interrupted.

---

[5] *Id.* at 3–4 (¶¶ 1–3).

[6] *Id.* at 6, 21 (¶¶ 14–15, 73).

[7] *Id.* at 6–7 (¶¶ 16–19).

[8] *Id.* at 21 (¶ 74).

Therefore, Defendants were aware that Plaintiff was experiencing interrupted meal periods as a result of being required to stay on the premises. Defendants' HR department told Plaintiff that they would get back to him regarding his inquiry about interrupted meal periods. However, Plaintiff did not hear back from Defendants. Further, neither Defendants' HR department nor Plaintiff's managers paid Plaintiff one additional hour of pay at his regular rate of compensation for each workday when Defendant failed to provide him with an uninterrupted meal period, despite Defendant's knowledge of these meal period violations.

. . . .

Plaintiff complained to Defendants that he was not relieved of his work duties during his meal and rest periods because he did not have coverage during his breaks. For example, in or around the end of December 2015 or beginning of January 2016, and thus within his first few months of employment, when one of Plaintiff's managers was off work for a few weeks, Plaintiff did not receive legally-compliant meal periods (in that they were interrupted, were not at least 30-minutes in length, and/or were missed). Plaintiff contacted his district manager to ask for coverage, and explained to his district manager that he was not receiving uninterrupted meal periods that were at least 30-minutes in length. Plaintiff's district manager essentially dismissed Plaintiff's concerns, stating that every branch had issues with lack of coverage, or words to that effect. Plaintiff's district manager also said that every branch is low staffed, or words to that effect. Thereafter, Plaintiff consistently did not have relief to take duty-free meal and rest periods.

. . . .

. . . . Plaintiff is informed and believes that Defendants had a pattern and practice of understaffing their branches in order to encourage customers to migrate towards digital banking features instead of performing transactions face-to-face in the branches. During the manager conference calls, branch managers raised concerns about understaffing. However, district managers were not receptive to such concerns, generally responding that "this is the staff that you get," and "this is the way Bank of America is moving," or words to that effect. Therefore, Defendants failed and refused to take any steps to address complaints about understaffing and lack of coverage. Consequentially, Plaintiff and the Class continued to not receive compliant meal and rest periods.[9]

The plaintiff's employment with Bank of America ended on or around January 2017, and he alleges that because Bank of America owed him wages due to the paid meal and rest period violations above, he was not paid all his wages upon discharge.[10]

---

[9] *Id.* at 7–9 (¶¶ 20–21, 24–25).

[10] *Id.* at 22 (¶ 79).

The plaintiff alleges that he was not reimbursed for business expenses based on the following

facts:

> Defendant required Plaintiff and members of the Class to use their personal cellular phones both during and outside of their work shifts in order to communicate with other Bank of America employees. In particular, Defendant instructed Plaintiff and members of the Class to use their personal cellular phones during work hours in order to communicate with their managers regarding status updates, emergencies, and/or any other work-related purposes, such as communicating with employees regarding scheduling or answering questions that Plaintiff's managers and/or other employees had.

> For example, in or around end of 2015 or beginning or 2016, Plaintiff's managers were trying to contact Plaintiff on his personal cellular phone because employees needed access to his key and to his code in order to access the bank vault. When Plaintiff was unable to respond immediately, Plaintiff's manager became upset at Plaintiff, questioning him with regards to his whereabouts and why he was unable to answer. As a result, Plaintiff was caused to reasonably believe that he had no choice but to keep his personal cellular phone on his person during all of his work hours and to respond to text messages and phone calls received from other Bank of American employees.

> . . . . [m]anagers would communicate with Plaintiff and the Class on their [cellphones] regarding work-related items [such as] scheduling, status updates, pending documentation, pending training, and approving timesheets for employees, among other items.

> On one occasion, on or about November 27, 2016, Plaintiff notified his manager that he was not feeling well and would be taking a sick day. Not only did Plaintiff's manager express her discontentment at Plaintiff taking a sick day, but Plaintiff's manager continued text messaging Plaintiff about work. For example, Plaintiff's manager told Plaintiff that the branch was "understaffed," or words to that effect. Plaintiff's manager also said that "you will have to be here for the meeting. No exceptions," or words to that effect. Plaintiff's manager also texted Plaintiff that day, inquiring about the location of a cash box, even though Plaintiff told his manager that he was not feeling well. Plaintiff shared screen shots of these text messages with Bank of America's HR department.

> . . . . Bank of America never reimbursed Plaintiff and the Class for the use of their personal cellular phone and/or data usage[.][11]

Mr. Mendoza does not specify when he received less than minimum wage, worked more than

40 hours a week without receiving overtime pay, or was not afforded full uninterrupted meal

breaks or rest periods.

---

[11] *Id.* at 24–25 (¶¶ 90–95).

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant "fair notice" of what the claims are and the grounds upon which they rest. *See* Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint does not need detailed factual allegations, but "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a claim for relief above the speculative level[.]" *Id.* (internal citations omitted).

To survive a motion to dismiss, a complaint must contain sufficient factual allegations, which when accepted as true, "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 557). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 557).

If a court dismisses a complaint, it should give leave to amend unless the "the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).

## ANALYSIS

### 1. California Labor Code Claims

#### 1.1 Governing Law

In *Landers v. Quality Communications, Inc.*, 771 F.3d 638 (9th Cir. 2014), as amended (Jan. 26, 2015), the Ninth Circuit set forth the standard for pleading wage-and-hour claims post-*Twombly* and *Iqbal*. The plaintiff there alleged that his employer violated the minimum-wage and

overtime requirements of the federal Fair Labor Standards Act ("FLSA"). *Id.* at 639–40. Specifically, the complaint alleged:

> [T]he named plaintiff . . . [was] entitled to a minimum wage and an overtime hourly wage of time and one-half [his] regular hourly wage for all hours worked in excess of forty hours per week, the named plaintiff . . . worked more than 40 hours per week for the defendants, and the defendants willfully failed to make said overtime and/or minimum wage payments.

*Id.* at 646 (brackets and ellipses in original).

The Ninth Circuit held that this recitation was insufficient to state a claim in light of *Twombly* and *Iqbal*. *Id.* It reiterated "the Supreme Court's pronouncement in *Iqbal* that a Plaintiff's pleading burden cannot be discharged by 'a pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action.'" *Id.* at 644 (internal brackets and ellipsis omitted) (quoting *Iqbal*, 556 U.S. at 678). It held that "[a]lthough plaintiffs in these types of cases cannot be expected to allege 'with mathematical precision,' the amount of overtime compensation owed by the employer, they should be able to allege facts demonstrating there was at least one workweek in which they worked in excess of forty hours and were not paid overtime wages." *Id.* at 646. It confirmed that allegations that "merely allege[] that [a plaintiff] was not paid for overtime hours worked," without more, do not plead a plausible claim. *Id.*

*Twombly* and *Iqbal* apply to all civil claims in federal court (not just FLSA claims), and thus federal courts apply the *Twombly*/*Iqbal* standard as delineated in *Landers* to minimum-wage, overtime, meal-breaks, and rest-period claims under the California Labor Code. Courts have held that a plaintiff must plead facts demonstrating at least one workweek when she was not paid minimum wage, worked in excess of 40 hours a week and was not paid overtime, or was impeded from taking a meal break or rest period, to state a plausible claim. *See, e.g.*, *Cortez v. United Nat. Foods, Inc.*, No. 18-cv-04603-BLF, 2019 WL 955001, at *10, *12 (N.D. Cal. Feb. 27, 2019) (applying *Landers* to California Labor Code minimum-wage, overtime, meal-break, and rest-period claims); *Suarez v. Bank of Am. Corp.*, No. 18-cv-01202-MEJ, 2018 WL 2431473, at *4–7 (N.D. Cal. May 30, 2018) (generally same).

Courts have held that general allegations that a plaintiff "regularly" worked without being adequately compensated, without more facts, are conclusory and insufficient to state a claim. *See, e.g.*, *Bush v. Vaco Tech. Servs., LLC*, No. 17-cv-05605-BLF, 2018 WL 2047807, at *9 (N.D. Cal. May 2, 2018) ("[Plaintiff's] bare assertion that she 'regularly' worked more than the statutory requirement is conclusory and insufficient under the standard set forth in *Landers*.") (citing *Perez v. Wells Fargo & Co.*, 75 F. Supp. 3d 1184, 1191 (N.D. Cal. 2014)). Similarly, general allegations that the defendant "required" a plaintiff to work without being adequately compensated, without more facts, are conclusory and insufficient to state a claim. *See, e.g.*, *Bush*, 2018 WL 2047807, at *8 (allegations that "Plaintiff was required to report to [defendant]'s headquarters" at certain times "is another way of saying that [plaintiff] and the putative class 'regularly' worked excess hours, and does not amount to an allegation that [plaintiff] *actually* worked [excess hours]") (emphasis in original); *McMillian v. Overton Sec. Servs., Inc.*, No. 17-cv-03354-JSC, 2017 WL 4150906, at *2 (N.D. Cal. Sept. 19, 2017) (allegations that plaintiff "was required to work in excess of 40 hours per week" fail to state a plausible claim).

## 1.2 Application

### 1.2.1 Claims One Through Four: Meal and Rest Periods, Minimum and Overtime Wages

#### 1.2.1.1 Individual Claims

Mr. Mendoza's first and second claims are for failure to provide meal-and-rest periods pursuant to California Labor Code §§ 512 and 226.7, and IWC Wage Orders.[12] Mr. Mendoza's third and fourth claims are for failure to pay minimum and overtime wages pursuant to California Labor Code §§ 510, 1194, 1197, and 1198, and IWC Wage Orders.[13] The defendant moves to dismiss these claims because the plaintiff has not alleged facts sufficient to satisfy the pleading requirements of Rule 8.[14]

---

[12] *Id.* at 16–19 (¶¶ 49–60).

[13] *Id.* at 19–21 (¶¶ 61–77).

[14] Mot. – ECF No. 30 at 12–17.

California "wage and hour claims are . . . governed by two complementary and occasionally overlapping sources of authority: the provisions of the Labor Code, enacted by the Legislature, and a series of 18 wage orders, adopted by the IWC." *Vaquero v. Stoneledge Furniture LLC*, 214 Cal. Rptr. 3d 661, 666 (2017), *as modified* (Mar. 20, 2017), *review denied* (June 21, 2017). The California Labor Code requires employers to give their nonexempt employees meal periods and rest periods during the workday. Cal. Lab. Code §§ 226.7, 512. Labor Code section 226.7(b) prohibits an employer from requiring an employee "to work during a meal or rest or recovery period mandated pursuant to an applicable statute, or applicable regulation, standard, or order of the Industrial Welfare Commission[.]" Section 226.7 and IWC Wage Order No. 5-2001, operating in conjunction, require that an employer must authorize and permit all employees to take rest periods for "ten (10) minutes net rest time per hour (4) hours" worked; "[h]owever, a rest period need not be authorized for employees whose total daily work time is less than three and one-half (3 1/2) hours." Cal. Code Regs. tit. 8, § 11140(12). Additionally, Labor Code section 512(a) requires an employer to "provid[e] the employee with a meal period of not less than 30 minutes" for workdays lasting more than five hours, and provide two meal periods for workdays in excess of 10 hours, subject to waiver in certain circumstances.

Here, the plaintiff alleges Bank of America failed to consistently provide uninterrupted meal and rest breaks.[15] His claims for failure to pay minimum wage and overtime wages owed are derived from the hours the plaintiff allegedly worked during his meal-and-rest periods. He alleges he worked eight to nine hours per day.[16] He states that he was not relieved of all duties during his meal-and-rest periods, was required to remain on the bank's premises, and was instructed by his managers that this was required in order for him to perform duties such as overrides/approvals, performing dual control, reviewing teller transactions, providing his keys/combinations for employees to access negotiables, safe-deposit boxes, and other similar items, and responding to

---

[15] FAC – ECF No. 18-1 at 3 (¶ 1).

[16] *Id.* at 21 (¶ 73).

customer inquiries, among other duties.[17] He does not identify any of the managers who gave these instructions.

Mr. Mendoza does not identify a specific calendar workweek when he was not paid minimum wage or worked in excess of 40 hours a week and was not paid overtime, or where his meal or rest periods were interrupted other than explaining that "in or around the end of December 2015 or beginning of January 2016," he did not receive a legally compliant meal period.[18] He alleges that during this time, he contacted his district manager to report that he was not receiving uninterrupted meal periods but his concerns were dismissed.[19] He also states that "[o]n or about December 17, 2015, [he] contacted Defendants' Human Resources [ ] department and notified HR that his meal periods were interrupted[,]" but while he was told somebody would get back to him about his concern, nobody did.[20]

The court finds that the preceding facts are sufficient to state a plausible claim. The plaintiff provided as an example that he was not provided with an uninterrupted meal or rest period "in or around the end of December 2015 or beginning of January 2016."[21] When viewed in combination with his allegation that he notified HR towards the end of December that he was not receiving compliant meal periods, he has stated a plausible claim. *See Tan v. GrubHub Inc.*, 171 F.Supp.3d 998, 1008 (N.D. Cal. 2016) ("*Landers* does not require the plaintiff to identify an exact calendar week or particular instance of denied overtime; instead, the allegations need only give rise to a plausible inference that there was such an instance.").

The authority cited by the defendant is inapposite to the facts here. The plaintiffs in each of those cases plead fewer facts sufficient to indicate a plausible claim. *See Soratorio v. Tesoro Ref. & Mktg. Co., LLC*, No. CV 17-1554-MWF (RAOx), 2017 WL 1520416, at *6 (C.D. Cal. April 26, 2017) (dismissing claim because the plaintiff's complaint stated "merely that workers were

---

[17] *Id.* at 7 (¶ 20).

[18] *Id.* at 8 (¶ 24).

[19] *Id.*

[20] *Id.* at 7–8 (¶ 21).

[21] *Id.* at 8 (¶ 24).

required to work through meal breaks; that Defendants did not provide the required meal breaks; and that Defendant 'suffered and permitted' Plaintiff and other employees to work through their meal breaks"); *Hernandez v. Houdini, Inc.*, No. SA CV 16-1825-DOC (JCGx), 2017 WL 8223987, *7–*8 (C.D. Cal. Mar. 21, 2017) (dismissing the claims because the plaintiff made only general allegations that he did not receive compliant meal periods and did not allege "who it was that cut short or cancelled his meal or rest periods, on what basis they were cut short and cancelled, who ordered Plaintiff and/or others to falsify their time cards, or any other details [showing plausibility]"); *Guerrero v. Halliburton Energy Servs., Inc.*, No. 1:16-CV-1300-LJO-JLT, 2016 WL 6494296, at *6 (E.D. Cal. Nov. 2, 2016) (claims dismissed because the plaintiff did not plead any period of time/specific workweek where he did not receive a compliant meal or rest period); *Freeman v. Zillow, Inc.*, No. SACV 14–01843–JLS (RNBx), 2015 WL 5179511, *5 (C.D. Cal. Mar. 19, 2015) (same).

### 1.2.1.2     Statute of Limitations

The defendants argue that even if the court finds that the plaintiff has pled sufficient facts for a plausible claim, the claim still fails because the asserted time period falls outside the statute of limitations.[22] The plaintiff counters that his seventh count for a UCL violation extends the statute of limitations period from three years to four years.[23]

A similar argument by a plaintiff relying on the same authority as Mr. Mendoza was dismissed in *Rojas-Cifuentes v. ACX Pacific Northwest, Inc.* No. 14-cv-00697-JAM-CKD, 2016 WL 6217060, at *3 (E.D. Cal. Oct. 25, 2016). The court there stated:

> The court finds that the *Cortez* holding does not extend as far as Plaintiff claims. Under *Cortez*, a four-year statute of limitations will apply to a UCL claim predicated on a Labor Code violation with a shorter statute of limitations. *Cortez* does not hold that once a violation serves as a predicate to a UCL claim the statute of limitations for the independent Labor Code violation also extends to four years. As [explained in this district], when a plaintiff borrows the violation of another law in order to make a UCL claim, 'the two causes of action do not become one.' *Pac. Gas & Elec. Co. v. Jesse M. Lange Distrib., Inc.*, No CIVS051180DFLKJM, 2005 WL 3507968, at *6 (E.D. Cal. Dec. 21, 2005). 'The UCL claim must remain a separate cause of action

---

[22] Mot. – ECF No. 30 at 13.

[23] Opp. – ECF No. 34 at 16.

because the UCL provides its own procedural guidelines and limited remedies[;]…[m]erely bringing a UCL claim does not allow a plaintiff to circumvent the statute of limitations already developed by the California legislature for different remedies under a different statute.' *Id. see also Sinfer v. Becton, Dickenson & Co.*, No 08-cv-821-IEG (BLM), 2008 WL 2899825 (S.D. Cal July 25, 2008) (dismissing a labor code violation as time barred but allowing the violation to serve as a predicate for the UCL claim). Insofar as Plaintiff asserts the meal period violations as a cause of action separate from his UCL claim, the three-year statute of limitations applies.

*Rojas-Cifuentes*, 2016 WL 6217060, at \*3.

The plaintiff filed his initial complaint in state court on March 25, 2019 and it was removed to this court on May 8, 2019.[24] The specific period of time used by the plaintiff to support his claims was "in or around the end of December 2015 or beginning of January 2016[.]"[25] This falls outside of the statute of limitations period. As a result, the plaintiff does not state a plausible claim, and his claims are dismissed without prejudice.

### 1.2.2    Claim Five: Wages Due

Mr. Mendoza's fifth claim is for failure to pay all wages due upon discharge pursuant to California Labor Code § 203.[26]

Under Labor Code section 201(a), "if an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately." But if an employee does not "hav[e] a written contract for a definite period [and] quits his or her employment, his or her wages shall become due and payable not later than 72 hours thereafter," subject to certain exceptions. Cal. Lab. Code § 202(a). Employees are awarded a penalty if an employer willfully fails to pay unpaid wages pursuant to sections 201 and 202, among others. *Id.* § 203(a). "A willful failure to pay wages within the meaning of Labor Code Section 203 occurs when an employer intentionally fails to pay wages to an employee when those wages are due." Cal. Code Regs. tit. 8, § 13520; *see Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157, 1201 (2008) ("The settled

---

[24] Compl. – ECF No. 1 at 2.

[25] FAC – ECF No. 18-1 at 8 (¶ 24).

[26] *Id.* at 22–23 (¶¶ 78–86).

1  meaning of 'willful[',] as used in section 203, is that an employer has intentionally failed or

2  refused to perform an act which was required to be done.")

3      Defendant also argues that the plaintiff's section 203 claim fails to the extent it relies on a

4  failure to make section 226.7 meal-and-rest period payments at termination because section 226.7

5  payments do not constitute "wages earned" under California Labor Code section 201.[27]

6      As this court has noted,

7  > district courts have disagreed over whether payment for meal and rest period
   > violations pursuant to section 226.7 are also wages for the purpose of section 203

8  > penalties. However a majority of courts, including those in this [d]istrict, have found
   > that premiums for unpaid rest breaks are "wages" entitling plaintiffs to waiting time

9  > penalties under the Labor Code section 203 for failure to timely pay wages upon

10 > termination.

11 *Suarez v. Bank of America Corp.*, No. 18-cv-01202-MEJ, 2018 WL 3659302, *10 (N.D. Cal. Aug.

12 2, 2018) (citing *In re: Autozone, Inc.*, 2016 WL 4208200, at *6 (N.D. Cal. Aug. 10, 2016), *recons.*

13 *denied sub nom. In re: AutoZone, Inc.*, 2016 WL 6834138 (N.D. Cal. Nov. 21, 2016), *leave to appeal*

14 *denied sub nom. Ellison v. AutoZone Inc.*, 2017 WL 6048892 (9th Cir. Mar. 3, 2017); *but see Ling v.*

15 *P.F. Chang's China Bistro, Inc.*, 245 Cal. App. 4th 1242, 1261 (2016) ("[T]he remedy for a section

16 226.7 violation is an extra hour of pay, but the fact that the remedy is measured by an employee's

17 hourly wage does not transmute the remedy into a wage as that term is used in section 203")); *see also*

18 *Ortiz v. Amazon.com LLC*, No. 17-cv-03820-JSW, 2018 WL 8221267, at *4 (N.D. Cal. Jan. 1, 2018)

19 ("[T]he court joins those courts, including its many colleagues in this District, that have found the

20 premium payment provided for as a remedy under Section 226.7 should be viewed as a wage[.]").

21     This claim is derivative of the plaintiff's first through fourth claims. Because the court

22 dismisses those claims, the defendants' motion to dismiss the plaintiff's fifth cause of action is

23 granted with leave to amend.

24

25

26

27 ────────────
   [27] Mot. – ECF No. 30 at 20.

28

### 1.2.3 Claim Six: Reimbursement

Mr. Mendoza's sixth claim is for failure to reimburse for business expenses pursuant to California Labor Code § 2802.[28]

California Labor Code Section 2802 requires an employer to "indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer[.]" "Merely alleging failure to reimburse unspecified work-related expenses is not enough to state a Section 2802 claim." *Tan*, 171 F.Supp.3d at 1005 (citing cases). "Instead, Section 2802 claims are sufficiently pled where the complaint identifies the particular expenses that were not reimbursed and affirmatively alleges that the expenses were part of the plaintiff's job duties." *Id.* (citing cases).

Here, the plaintiff alleges that he and others were required to use their personal cell phones for work-related purposes such as communicating with other employees and managers regarding status updates, emergencies, scheduling, pending documentation, pending training, approving timesheets, and answering work-related questions.[29] He states that Bank of America never reimbursed him or the class for the use of their cell phones or for the associated data usage.[30] "Plaintiff has specifically identified particular expenses in his complaint and affirmatively alleges that they were necessary business expenses." *Karl v. Zimmer Biomet Holdings, Inc.*, No. 18-04176-WHA, 2018 WL 5809428, at *9 (N.D. Cal. Nov. 6, 2018).

As a result, the court denies the defendant's motion to dismiss the plaintiff's sixth claim.

### 2. Claim Seven: UCL

The UCL provides a cause of action for business practices that are (1) unlawful, (2) unfair, or (3) fraudulent. Cal. Bus. & Prof. Code § 17200, *et seq*. Each prong of the UCL provides "a

---

[28] FAC – ECF No. 18-1 at 23–25 (¶¶ 87–96).

[29] *Id.* at 24–25 (¶ 90–95).

[30] *Id.* at 25 (¶ 95).

separate and distinct theory of liability." *Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 731 (9th Cir. 2007). "Generally, violation of almost any law may serve as a basis for a UCL claim." *Antman v. Uber Techs., Inc.*, No. 3:15-cv-01175-LB, 2015 WL 6123054, at *6 (N.D. Cal. Oct. 19, 2015) (internal quotation marks omitted). Claims under the UCL "shall be commenced within four years after the cause of action accrued." Cal. Bus. & Prof. § 17208; *see also Cortez v. Purolator Air Filtration Products Co.*, 23 Cal.4th 163, 179 (2000) ("*Any* action on *any* UCL cause of action is subject to the four-year period of limitations created by that section.").

Mr. Mendoza's seventh cause of action alleges unfair competition. This claim relies on and is derivative of his meal-break, rest-period, minimum wage, and overtime claims which have been dismissed pursuant to the three-year statute of limitations governing those claims, however, his UCL claim is still within the four-year period that that statute allows. The "[p]laintiff may pursue UCL claims predicated upon unpaid overtime and missed meal and rest periods that occurred within the four-year limitations period." *Van v. Language Line Services, Inc.*, No. 14-cv-03791-LHK, 2016 WL 3143951, at *30 (N.D. Cal. June 6, 2016) (citing case).

As the court found above, the plaintiff plead sufficient facts to establish a plausible claim for California Labor Code violations, but the claims were dismissed pursuant to the statute of limitations on those claims. The plaintiff's UCL claim, being based on these facts, but not barred by the same statute of limitations, is therefore sufficiently pled. Accordingly, the court denies the defendant's motion with regard to the UCL claim.

### 3. Injunctive Relief

The parties say in their briefs that the plaintiff has agreed to dismiss his claim for injunctive relief.[31] Accordingly, the court dismisses this claim with prejudice.

---

[31] Mot. – ECF No. 30 at 26; Opp. – ECF No. 34 at 30.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CONCLUSION

The court grants Bank of America's motion to dismiss claims one through five and denies the motion to dismiss claims six and seven. The dismissal is without prejudice, and Mr. Mendoza may file an amended complaint within 21 days of the date of this order. (If he files an amended complaint, he must attach a blackline of his new amended complaint against his First Amended Complaint.)

The court dismisses the claim for injunctive relief with prejudice.

**IT IS SO ORDERED.**

Dated: August 30, 2019

_____
LAUREL BEELER
United States Magistrate Judge