**MARLIN & SALTZMAN LLP**
Stanley D. Saltzman (SBN 90058)
Bradley R. Fagnani (SBN 261330)
Tatiana G. Avakian (SBN 298970)
29800 Agoura Road, Suite 210
Agoura Hills, California 91301
Telephone: (818) 991-8080
Facsimile: (818) 991- 8081
ssaltzman@marlinsaltzman.com
bfagnani@marlinsaltzman.com
tavakian@marlinsaltzman.com

*Attorneys for Plaintiff and the putative Class*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **MIGUEL MENDOZA**, individually, and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> **BANK OF AMERICA CORPORATION**, and **DOES 1-100**, inclusive, <br><br> Defendants. | **CASE NO.: 3:19-cv-02491-LB** <br><br> **[Assigned for all purposes to the Hon. Laurel Beeler, Courtroom B – 15th Floor]** <br><br> <u>**SECOND AMENDED CLASS ACTION COMPLAINT FOR:**</u> <br><br> 1. **Failure to Provide Compliant Meal Periods (Lab. Code §§ 512, 226.7, and Wage Order No. 4);** <br><br> 2. **Failure to Provide Compliant Rest Breaks (Lab. Code §§ 512, 226.7, and Wage Order No. 4);** <br><br> 3. **Failure to Pay Minimum Wages (Lab. Code §§ 1194, 1197 and Wage Order No. 4);** <br><br> 4. **Failure to Pay Overtime Wages (Lab. Code §§ 510, 1194, 1198, and Wage Order No. 4);** <br><br> 5. **Failure to Pay All Wages Upon Discharge (Lab. Code §§ 200-203);** <br><br> 6. **Failure to Reimburse for Necessary Business Expenses (Lab. Code § 2802);** <br><br> 7. **Violation of the California Unfair Competition Law (Bus. & Prof. Code § 17200, *et seq*.); and** <br><br> **JURY TRIAL DEMANDED** |

Plaintiff Miguel Mendoza ("Plaintiff"), individually and on behalf of all others similarly situated and similarly aggrieved, hereby brings this Class Action Complaint against Defendant Bank of America Corporation ("Bank of America") and DOES 1 through 100 (collectively, "Defendants"), and alleges as follows:

**INTRODUCTION**

1. Plaintiff brings this class action on behalf of himself and all others similarly situated and similarly aggrieved employees (collectively, the "Class"), who have sustained injuries arising out of Bank of America's systematic course of uniform payroll policies and practices that violate the California Labor Code, Industrial Welfare Commission ("IWC") Wage Order No. 4, California Code of Regulations, and California Business and Professions Code section 17200. Specifically, Bank of America intentionally and wrongfully requires its operations managers to remain on duty for meal and rest periods by requiring them to remain on the premises, and often fails to provide its operations managers with an otherwise off duty, uninterrupted, 30-minute meal period within the first five hours of their shifts, an uninterrupted 10-minute rest period for every four hours (or major fraction thereof) of work, and fails to pay employees the resulting vested one additional hour of pay at the employees' regular rate of compensation for each workday that the meal or rest period was not provided.

2. Under California law, unless an employee is relieved of all duty during his or her thirty-minute meal period, the meal period shall be considered an "on duty" meal period and counted as hours worked. (8 Cal. Code Regs. § 11040 ["Wage Order"], Part 11(A).) An "on duty" meal period shall be permitted only when the nature of the work prevents an employee from being relieved of all duty *and* when by written agreement between the employer and employee an on-the-job meal period is agreed to. The written agreement must state that the employee may, in writing, revoke the agreement at any time. (*Id*.) Here, Plaintiff and the Class were not relieved of all duty during their meal periods and were, therefore, forced to remain "on duty." Further, no on-the-job meal period was agreed to in writing. Plaintiff and the Class were therefore entitled to be, but were not, paid at their regular rate of pay for all "on duty" meal periods. Thus, Plaintiff

and Class are due compensation for all hours worked during their meal periods, including all minimum wages and overtime wages owed.

3.     If the employer requires the employee to remain at the work site or facility during the meal period, the meal period must be paid as time worked because it is "on-duty." This is true even where the employee is relieved of all work during the meal period. (*Bono Enterprises, Inc. v. Bradshaw* (1995) 32 Cal.App.4th 968.) Here, Plaintiff and the Class were required to remain in the bank during their meal (and rest) periods, therefore, the meal periods should have been paid, but were not paid.  A compliant, timely meal period was not provided. Wages for all hours worked during their meal periods, including all minimum wages and overtime wages, are, therefore, due.

4.     Under California law, when employees are forced to miss a meal or rest period, take a late meal or rest period, take a shortened meal period lasting less than 30 minutes, take an interrupted meal or rest period, are required to take unpaid "on duty" meal periods, or are required to remain on the premises during meal periods without pay, they are immediately entitled to one additional hour of pay at the employees' regular rate of compensation for each workday where a meal or rest period was not provided, up to a total of two hours pay – one for any number of missed meal periods and one for any number of missed rest periods. Indeed, the California Supreme Court has held that an employee is entitled to the additional hour of pay *immediately* upon being forced to miss a rest or meal period, even in the absence of any request by employees or payment authorization by their supervisors. (*Murphy v. Kenneth Cole Productions, Inc.* (2007) 40 Cal.4th 1094, 1108.)

5.     Bank of America's pattern, practice, and uniform administration of enterprise-wide policies and practices regarding illegal and improper compensation, as described herein, creates an entitlement to recovery by the Plaintiff and the putative Class for the unpaid balance of the full amount of unpaid and/or withheld compensation, including interest thereon, applicable penalties, reasonable attorneys' fees, and costs of suit according to the mandates of the California Labor Code and California Code of Civil Procedure.

## JURISDICTION AND VENUE

6.     This Court has jurisdiction over the statutory violations alleged herein, including, but not limited to, violations of Labor Code §§ 200-203, 226.7, 510, 512, 558, 1194, 1197, 1198, 2802, as well as over the violations of Bus. & Prof. Code §§ 17200 *et seq*., and the governing California Wage Order No. 4, and other California Regulations.

7.     Venue is proper under 28 U.S.C. § 1391 because Defendant, at all material times, has had continuous and systematic contacts in this District by actively doing business and perpetuating the wrongful and deceptive business practices that are the subject of this lawsuit in this District.

## THE PARTIES

8.     Plaintiff is an individual and resident of the State of California, and at all relevant times was a non-exempt Bank of America Operations Manager in the State of California. At all times pertinent, Plaintiff's employment duties were discharged within the State of California.

9.     Plaintiff was employed by Bank of America from September 2015 to January 2017 as an Operations Manager.

10.     Bank of America is a Delaware corporation with hundreds of branch offices in California. On information and belief, Bank of America employs an Operations Manager at each and every branch office in California.

11.     The true names and capacities whether individual, corporate, associate or otherwise of Defendants DOES 1 through 100, inclusive, are unknown to Plaintiff at this time.  Plaintiff will amend this Complaint to show their true names and capacities once they are ascertained. Plaintiff is informed and believes, and based thereon alleges, that each of said fictitious defendants are responsible in some manner for the acts and occurrences set forth herein, and that the injuries and damages alleged herein were and are the direct and proximate result of the actions of these defendants. At all times herein mentioned, each Defendant participated in the doing of the acts alleged to have been done by the named Defendant, and furthermore, all Defendants were the agents, servants and employees of each of the other Defendants, and at all times herein

mentioned, were acting within the course and scope of said agency and employment. At all relevant times, Defendants were members of, and engaged in, a joint venture, partnership and common enterprise, and acting within the course and scope of, and in pursuance of, said joint venture, partnership and common enterprise.

12.    The use of the term "Defendant" or "Defendants" in any of the allegations in this Complaint, unless specifically alleged otherwise, is intended to include and charge, both jointly and severally, not only the Defendants identified in this Complaint, but also all Defendants designated as DOES 1 through 100, inclusive, as though the term "Defendants" was followed in each and every instance throughout this Complaint with the phrase "and each of them jointly and severally," including all named Defendants and Defendants included herein and sued under the fictitious names of DOES 1 through 100, inclusive.

## FACTUAL ALLEGATIONS

13.    At all relevant times, Bank of America classified Plaintiff and members of the Class as "non-exempt" under IWC Wage Order No. 4 (the applicable Wage Order here), the California Code of Regulations, and the California Labor Code.

14.    Plaintiff was eligible for meal periods during his shifts because, on average, he regularly worked shifts in excess of 5 hours.  *See* Labor Code § 512(a) ("An employer shall not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes, except that if the total work period per day of the employee is no more than six hours, the meal period may be waived by mutual consent of both the employer and employee.").

15.    Plaintiff was also eligible for rest periods during his shifts because, on average, he regularly worked shifts of at least 3.5 hours.  *See* IWC Wage Order No. 4 § 12 ("[A] rest period need not be authorized for employees whose total daily work time is less than three and one-half (3½) hours.").

16.    During their employment, Plaintiff and members of the Class were often not authorized or permitted by their supervisors to take an off duty, uninterrupted, full 30-minute

meal break within the first five hours of their shifts that exceeded five hours, as required by Labor Code section 512 and IWC Wage Order No. 4.

17.    During their employment, Plaintiff and members of the Class were often not authorized or permitted by their supervisors to take an uninterrupted, full 10-minute rest break per four hours worked or major fraction thereof, as required by Labor Code section 512 and IWC Wage Order No. 4.

18.    During their employment, Plaintiff and members of the Class were often not relieved of all duties during meal and rest breaks, as required by IWC Wage Order No. 4.

19.    During their employment, Plaintiff and members of the class were required to remain on the premises for meal breaks without a written agreement for on-the-job paid meal periods.  Likewise, Plaintiff and members of the class were required to remain on the premises during their rest periods.

20.    Defendants instructed Plaintiff not to leave the premises during his meal and rest periods.  Defendants further instructed Plaintiff that he was to be available during his meal and rest periods to perform various duties and responsibilities.  For example, Plaintiff's managers, Tenisha Donaville and Amanda Velasco/Quiroz, told him that he is a manager, and that as such, he was to take his breaks and lunch on the bank premises in order to provide assistance to other bank employees and to complete his work duties, or words to that effect.  As a result, Plaintiff's meal periods were regularly interrupted because Defendants expected Plaintiff to perform various duties while supposedly on off-duty meal and/or rest breaks, including, but not limited to, the following: overrides/approvals; perform dual control; review teller transactions; provide his keys/combinations for employees to access negotiables, safe deposit boxes, and other similar items that required keys/combinations; and respond to customer inquiries, among other duties.

21.    On or about December 17, 2015, Plaintiff contacted Britney Wasserman ("Ms. Wasserman") of Defendants' Human Resources ("HR") department and notified Ms. Wasserman that his meal periods were being interrupted.  Therefore, Defendants were aware that Plaintiff was experiencing interrupted meal periods as a result of being required to stay on the premises.

Ms. Wasserman told Plaintiff that they would get back to him regarding his inquiry about interrupted meal periods. However, despite having been told that his employer would get back to him about his stated concern of being deprived of uninterrupted meal and/or rest breaks, Plaintiff did not hear back from Defendants. Further, neither Defendants' HR department nor Plaintiff's managers paid Plaintiff one additional hour of pay at his regular rate of compensation for each workday when Defendant failed to provide him with an uninterrupted meal period, despite Defendants' knowledge of these meal period violations.

22.   Likewise, Plaintiff's rest periods were regularly interrupted because Defendants expected Plaintiff to be available to the staff and to perform the same duties that he performed throughout the day, as well as during his meal periods.

23.   Defendants did not permit Plaintiff to complete his meal and rest periods before performing these work duties. As set forth above, Plaintiff's managers specifically told him that because he was a manager, if he was on a meal or rest period, he was still expected to end any break that he might be on, and promptly address and complete any work assignments that came up during his break, and resume his break only after he completed his work assignments, or words to that effect.

24.   Further, Defendants failed to provide Plaintiff any other managerial or even non-exempt relief to enable him to take duty-free meal and rest periods. Plaintiff complained to Defendants that he was not being relieved of his work duties during his meal and rest periods because he did not have coverage during his breaks. For example, in or around the end of December 2015 or beginning of January 2016, and thus within his first few months of employment, when one of Plaintiff's managers was off work for a few weeks, Plaintiff did not receive legally-compliant meal periods (in that they were interrupted, were not at least 30-minutes in length, and/or were missed). Plaintiff contacted his district manager, Mark (last name unknown), to ask for coverage, and explained to his district manager that he was not receiving uninterrupted meal periods that were at least 30-minutes in length. Plaintiff's district manager essentially dismissed Plaintiff's concerns, stating that every branch had issues with lack of

coverage, or words to that effect.  Plaintiff's district manager also said that every branch is low staffed, or words to that effect.  In sum and substance, he was told in no uncertain terms that legally compliant breaks of hourly employees such as he and others similarly situated had to take a back seat to branch business needs. Thereafter, Plaintiff consistently did not have relief to take duty-free meal and rest periods.

25.    In addition to Defendants requiring Plaintiff to regularly perform work during his meal and rest periods, Plaintiff is informed and believes that Defendants purposely understaffed the branches, resulting in Plaintiff and the Class not receiving compliant meal and rest periods. During manager conference calls and morning huddles, Defendants emphasized Defendants' practice of migrating towards digital interfaces, where customers would be encouraged to use ATMs and mobile banking as opposed to face-to-face transactional banking.  Plaintiff is informed and believes that Defendants had a pattern and practice of understaffing their branches in order to encourage customers to migrate towards digital banking features instead of performing transactions face-to-face in the branches.  During the manager conference calls, branch managers raised concerns about understaffing.  However, district managers were not receptive to such concerns, generally responding that "this is the staff that you get," and "this is the way Bank of America is moving," or words to that effect.  Therefore, Defendants knowingly and intentionally failed and refused to take any steps to address complaints about understaffing and lack of coverage.  Consequentially, Plaintiff and the Class continued to not receive compliant meal and rest periods.

26.    In or around April or May 2016, Plaintiff was transferred from the Concord, California branch to the Clayton, California branch, where he continued to experience non-compliant meal and rest periods.

27.    At both the Concord and Clayton branches, Plaintiff's meal and rest period violations occurred more frequently near the beginning or end of the month, or during the middle of the month.  These time periods faced a heavier flow of customers at the branch due to the processing of mortgage payment transactions, as well as the processing of paychecks and other

similar transactions.  As a result of the high volume of customers at the bank and Defendant's continued practice of understaffing its branches, Defendant once again made it clear to Plaintiff and the Class that he and the Class were expected to be available to perform work during his/their meal and rest periods, as set forth above, including, but not limited to, responding to questions by other employees regarding the processing of transactions, reviewing and/or processing transactions, reviewing and/or processing currency transaction reports (for transactions in an amount greater than $10,000), and being available to provide dual support to obtain cash for customers, among other duties.

28.    By way of example only, and without meaning to limit the frequency of such events which will be more efficiently identified once discovery has begun and the Plaintiff has had access to his time records,  in or around the beginning and middle of June 2016, Plaintiff's meal periods were interrupted approximately once per shift, and his rest periods were interrupted approximately once or twice per shift as a result of a high volume of clients at the branch.  During that period, Plaintiff took his meal and rest periods in Defendant's break room because Defendant expected Plaintiff to be available at the branch.  While in the break room during his meal and rest periods, employees would approach Plaintiff to ask him questions on processing transactions or requesting his approval on processing transactions, particularly those involving currency transaction reports.  On some occasions during that period, because the senior bankers or tellers were already assisting customers in other matters, tellers and bankers would also approach Plaintiff (the operations manager) during his meal and rest periods to direct questions to him about transactions and/or requested approval of transactions.

29.    Based on the directions that Plaintiff had received from his managers, Tenisha Donaville and Amanda Velasco/Quiroz about taking his meal and rest periods on the bank's premises and performing work during his meal and rest periods, Plaintiff felt that he had no choice but to perform work during his meal and rest periods during these time periods and throughout his employment.

/ / /

30.     Defendant did not pay Plaintiff one additional hour of pay at his regular rate of compensation for each workday during the period of in or around the beginning and middle of June 2016 when Defendant failed to provide Plaintiff with uninterrupted meal and rest periods, not did it do so at any other time period throughout his employment.

31.     In or around the beginning of June 2016, Plaintiff worked approximately 8 hours per shift.  Because Plaintiff also worked off-the-clock through his meal periods during that time period and did not receive pay for that time (including, the payment of minimum wages), the time that Plaintiff worked off-the-clock caused Plaintiff's total hours worked during that period to be in excess of 8 hours per shift.  Therefore, Plaintiff worked overtime hours during that period, but was not paid minimum wages or overtime wages for that time.

32.     As a result of Defendants practice of requiring Plaintiff and the putative Class to perform work during his meal and rest periods, and of Defendants' practices and procedures of understaffing their branches, Plaintiff and the putative Class did not receive timely meal periods, i.e., no later than the end of the fifth hour of work.  In addition, Plaintiff's and the putative Class' rest periods were delayed, such that they did not occur in the middle of each work period, and were regularly interrupted.

33.     As set forth above, Plaintiff's and members of the Class's missed, late, shortened, "on duty," and on-the-premises meal and rest breaks were caused by pressure from supervisors and Bank of America's required business practices, and were not voluntary.

34.     Whenever Plaintiff's and members of the Class's meal or rest breaks are/were late, missed, or shortened because of business concerns and thus not voluntary on the part of the employee, Bank of America is required by statute and Wage Order No. 4 to pay the affected employee one additional hour of pay at his or her regular rate of compensation for each workday that the meal or rest period was not provided, up to a total of two hours pay – one for any number of missed meal periods and one for any number of missed rest periods.

35.     Whenever Plaintiff's and members of the Class's meal or rest breaks are "on duty" or required to be on-the-premises, their breaks are on-the-clock and they must be paid for the

time spent working by the Class Members during these non-compliant breaks, in addition to being paid the required one additional hour of pay at his or her regular rate of compensation for each workday that the meal or rest period was not provided, up to a total of two hours pay – one for any number of missed meal periods and one for any number of missed rest periods, as required by the Wage Order and the Labor Code.

36.    Plaintiff's and members of the Class's right to one additional hour of pay at their regular rate of compensation for each workday that the meal or rest period was not provided, up to a total of two hours pay – one for any number of missed meal periods and one for any number of missed rest periods, vested immediately upon the late, missed, or short meal or rest breaks.

37.    Plaintiff's and members of the Class's right to one additional hour of pay at their regular rate of compensation for each workday that the meal or rest period was not provided, up to a total of two hours pay – one for any number of missed meal periods and one for any number of missed rest periods, vested immediately upon the nonpayment for time worked for "on duty" or on-the-premises meal or rest breaks.

38.    During the class period, Bank of America: (1) failed to track and identify which employee meal periods were late, missed, or short; (2) failed to maintain records of whether the missed, late, or short meal period was due to the press of business or voluntary; (3) failed to pay employees' "on duty" or on-the-premises meal or rest breaks; and (4) failed to pay one additional hour of pay at the employees' regular rate of compensation for each workday that a meal or rest period was not provided, up to a total of two hours pay – one for any number of missed meal periods and one for any number of missed rest periods.

39.    As a result, Plaintiff and members of the Class were not paid one additional hour of pay at the employees' regular rate of compensation for each workday that a meal or rest period was late, missed, short, "on duty," or on-the-premises meal or rest breaks, up to a total of two hours pay – one for any number of missed meal periods and one for any number of missed rest periods, in violation of California law.

/ / /

40.     Bank of America's wholesale failure to comply—or even have a system for complying—with California's meal and rest break laws provided it with a competitive advantage over companies that complied with California law.

41.     Additionally, Bank of America could have easily implemented a system for automatically paying one additional hour of pay at the employees' regular rate of compensation for each workday that a meal or rest period was not provided, up to a total of two hours pay – one for any number of missed meal periods and one for any number of missed rest periods, but chose not to do so. For example, Bank of America could have simply paid operations managers one additional hour of pay at the employees' regular rate of compensation for each workday that their meal breaks were "on duty" or on-premises, and simply paid the meal breaks as time worked. Further, Bank of America could instruct operations managers to notify their supervisors when they received interrupted, short, or late meal or rest breaks. Moreover, on information and belief, software exists where Bank of America can track when breaks are improper, record the reasons therefor, and pay compensation of one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest period is not provided, up to a total of two hours pay – one for any number of missed meal periods and one for any number of missed rest periods, to affected employees. These systems also record that additional compensation on wage statements.

42.     Because Bank of America failed to implement a system for tracking meal and rest break violations and recording whether they were voluntary, a presumption arises that the break violations were involuntary and Bank of America owes employees one additional hour of pay at the employees' regular rate of compensation therefor, up to a total of two hours pay – one for any number of missed meal periods and one for any number of missed rest periods. (*Safeway, Inc. v. Superior Court of Los Angeles County* (2015) 238 Cal.App.4th 1138, 1159-1160.)

43.     Moreover, because Bank of America required Plaintiff and the Class to perform work during their meal periods while Plaintiff and the Class were clocked out, Plaintiff and the Class worked time for which they were not compensated, including minimum wages and/or

1  overtime wages.

2      44.    Bank of America's policies, practices, and other conduct described herein violated

3  the Labor Code, Wage Order No. 4 (9 Cal. Code Regs., § 11040), and Business & Professions

4  Code sections 17200, et seq.

5                                    **CLASS ALLEGATIONS**

6      45.    Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23 on behalf of himself

7  and the proposed Class defined as follows:

8      All of Bank of America's non-exempt California operations managers who worked a

9      shift over five hours in length beginning four years from the date of the filing of this

10     Complaint to the time judgment is entered hereon, and who were not provided with an

11     off duty, uninterrupted, 30 minute meal break that started before the beginning of their

12     sixth hour of work, or were required to remain on the premises during their meal breaks,

13     or were not provided off duty rest periods of at least 10 minutes for every four hours of

14     work or major fraction thereof.

15     46.    This case is appropriate for class treatment because Plaintiff can prove the elements

16 of his claims on a class-wide basis using the same evidence as would be used to prove those

17 elements in individual actions alleging the same claims.

18     47.    **Numerosity and Ascertainability:** The members of the Class are so numerous that

19 joinder of all members would be unfeasible and not practicable. The membership of the Class is

20 unknown to Plaintiff at this time; however, it is estimated that the Class number greater than one

21 thousand individuals. The identity of such membership is readily ascertainable via inspection of

22 Defendants' books and records or other approved methods. Similarly, Class members may be

23 notified of the pendency of this action my mail, email, internet postings, and/or publication.

24     48.    **Common Questions of Law or Fact:** There are common questions of law and fact

25 as to Plaintiff and all other similarly situated persons, which predominate over questions affecting

26 only individual Class members, including, without limitation:

27 / / /

28

a)    Whether Bank of America required Plaintiff and members of the Class to remain on site during meal and rest breaks;

b)    Whether Bank of America failed to relieve Plaintiff and members of the Class of all duty during meal and rest breaks;

c)    Whether Bank of America required Plaintiff and members of the Class to miss meal periods, begin meal periods after the beginning of their sixth hour of work, or take meal periods less than 30 minutes long;

d)    Whether Bank of America and Plaintiff and members of the Class agreed in writing to "on duty" meal and rest periods;

e)    Whether Bank of America had a policy which unlawfully failed to monitor and categorize missing, late, or short meal and/or rest periods;

f)    Whether Bank of America's failure to record the reasons for missed, short, or late meal and/or periods creates a presumption that all such periods were missed, short, or late involuntarily;

g)    Whether Bank of America had a policy or practice of not automatically paying Plaintiff and members of the Class one additional hour of pay at the employees' regular rate of compensation for involuntarily missed, short, and/or late meal or rest periods, up to a total of two hours pay – one for any number of missed meal periods and one for any number of missed rest periods;

h)    Whether Bank of America's failure to have a policy or practice for automatically paying the Class members one additional hour of pay at the employees' regular rate of compensation for non-complaint meal or rest periods, up to a total of two hours pay – one for any number of missed meal periods and one for any number of missed rest periods, violated the California Labor Code and applicable Wage Order;

i)    Whether the compensation paid to the Class, based on hours worked during their meal periods, was less than the applicable minimum wage or, where applicable, less than the proper overtime wage;

j)    Whether the Class was improperly required to incur Defendant's necessary business expenses without reimbursement therefor;

k)    Whether Plaintiff and the Class members were damaged by Bank of America's conduct;

l)    Whether Bank of America's actions or inactions violated the statutes invoked herein;

      and

m)    Whether restitutionary disgorgement of the value to Bank of America non-complaint meal and/or rest periods is appropriate under Business & Professions Code section 17203.

49.    **Predominance of Common Questions:** Common questions of law and fact predominate over questions that affect only individual members of the Class because all members of the Class were subject to the identical policies and practices. The common questions of law set forth above are numerous and substantial and stem from Defendants' practices applicable to each individual Class member. As such, these common questions predominate over individual questions concerning each individual Class member's showing as to his or her eligibility for recovery or as to the amount of his or her damages.

50.    **Typicality:** Plaintiff's claims are typical of the claims of the other members of the Class because, among other things, Plaintiff and all Class members were comparably injured through Bank of America's misconduct described above. As alleged herein, Bank of America subjected all of the members of the class to similar violations of the California Industrial Welfare Commission Wage Orders (California Code of Regulations), the California Labor Code, and California Business and Professions Code section 17200, which prohibits unlawful and/or unfair business practices.

51.    **Adequacy of Representation:** Plaintiff is an adequate class representative because he is fully prepared to take all necessary steps to represent fairly and adequately the interests of the members of the Class, and because his interests do not conflict with the interests of other

Class members they seek to represent. Moreover, Plaintiff's attorneys are ready, willing and able to fully and adequately represent Plaintiff and the members of the Class. Plaintiff's attorneys are experienced in complex class action litigation, and they will prosecute this action vigorously. Plaintiff and his counsel, who are experienced class action lawyers, will fairly and adequately protect the Class members' interests.

52.    **Superiority:** The nature of this action and the laws available to Plaintiff and members of the Class make the class action format a particularly efficient and appropriate procedure to redress the violations alleged herein. If each Class member were required to file an individual lawsuit, Bank of America would necessarily gain an unconscionable advantage since it would be able to exploit and overwhelm the limited resources of each individual plaintiff with its vastly superior financial and legal resources. Moreover, the prosecution of separate actions by the individual Class members, even if possible, would create a substantial risk of inconsistent or varying verdicts or adjudications with respect to the individual Class members against Bank of America, and which would establish potentially incompatible standards of conduct for Bank of America and/or legal determinations with respect to individual Class members which would, as a practical matter, be dispositive of the interests of the other Class members not parties to adjudications or which would substantially impair or impede the ability of the Class members to protect their interests. Further, the claims of the individual members of the Class are not sufficiently large to warrant vigorous individual prosecution considering all of the concomitant costs and expenses attending thereto.

53.    A community of interest also exists in ensuring that the relief granted is sufficient to adequately compensate the members of the Class.

54.    A practice or policy of not paying one additional hour of pay at the employees' regular rate of compensation for each workday that the meal or rest period was not provided, up to a total of two hours pay – one for any number of missed meal periods and one for any number of missed rest periods, presents an issue "suitable for class treatment." (*Safeway*, *supra*, 238 Cal.App.4th at 1159.)

## **FIRST COUNT**

### **Failure to Provide Compliant Meal Breaks**

### **[Cal. Lab. Code §§ 226.7 and 512; IWC Wage Order No. 4 § 11]**

55.     Plaintiff incorporates by reference the preceding paragraphs of this Complaint as though set forth in full.

56.     California Labor Code section 512(a) sets forth the relevant meal period requirement, as follows: "An employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes…."

57.     California Labor Code section 226.7 provides for a remedy for non-complaint meal periods as follows:

(a) No employer shall require any employee to work during any meal or rest period mandated by an applicable order of the Industrial Welfare Commission.

(b) If an employer fails to provide an employee a meal period or rest period in accordance with an applicable order of the Industrial Welfare Commission, the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period is not provided.

58.     The Wage Order likewise sets forth the meal period requirements and penalties above for workers, as follows:

(A) No employer shall employ any person for a work period of more than five (5) hours without a meal period of not less than 30 minutes…Unless the employee is relieved of all duty during a 30 minute meal period, the meal period shall be considered an "on duty" meal period and counted as time worked. An "on duty" meal period shall be permitted only when the nature of the work prevents an employee from being relieved of all duty and when by written agreement between the parties an on-the-job paid meal period is agreed to. The written agreement shall state that the employee may, in writing, revoke the agreement at any time. Unless the employee is relieved of all duty during a 30 minute meal

period, the meal period shall be considered an "on duty" meal period and counted as time worked. An "on duty" meal period shall be permitted only when the nature of the work prevents an employee from being relieved of all duty and when by written agreement between the parties an on-the-job meal period is agreed to. The written agreement shall state that the employee may, in writing, revoke the agreement at any time…

…

(D) If an employer fails to provide an employee a meal period in accordance with the applicable provisions of this order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each workday that the meal period is not provided.

59.     "An   employer's duty with   respect   to meal breaks under   both section   512, subdivision (a) and [the] Wage Order…is an obligation to provide a meal period to its employees. The employer satisfies this obligation if it relieves its employees of all duty, relinquishes control over their activities and permits them a reasonable opportunity to take an uninterrupted 30-minute break, and does not impede or discourage them from doing so." (*Brinker Rest. Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1040.)

60.     Based on all allegations set forth in paragraphs 13-54, Defendants' meal break policies are entirely inadequate and fail to comply with California law.

61.     Pursuant to Labor Code § 226.7(b) and IWC Wage Order No. 4, Plaintiff and each member of the putative Class is entitled to recover from Defendants additional compensation equal to the sum of one hour of pay at their regular rate of compensation for each day on which at least one non-compliant meal period was provided.

## SECOND COUNT

### Failure to Provide Compliant Rest Breaks

### [Cal. Lab. Code §§ 226.7 and 512; IWC Wage Order No. 4 § 12]

62.     Plaintiff incorporates by reference the preceding paragraphs of this Complaint as though set forth in full.

63.    The Wage Order sets forth the rest period requirements and penalties above for workers in professional, technical, clerical, mechanical and similar occupations, as follows:

(A) Every employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period. The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof.....

…

(B) If an employer fails to provide an employee a rest period in accordance with the applicable provisions of this order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each workday that the rest period is not provided.

64.    California Labor Code section 226.7 provides for a remedy for non-compliant rest periods as follows:

(a) No employer shall require any employee to work during any meal or rest period mandated by an applicable order of the Industrial Welfare Commission.

(b) If an employer fails to provide an employee a meal period or rest period in accordance with an applicable order of the Industrial Welfare Commission, the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period is not provided.

65.    Based on all allegations set forth in paragraphs 13-54, Defendants' rest break policies are entirely inadequate and fail to comply with California law.

66.    Pursuant to Labor Code § 226.7(b) and IWC Wage Order No. 4, Plaintiff and each member of the putative Class is entitled to recover from Defendants the sum of one hour of pay at their regular rate of compensation for each day on which at least one noncompliant rest period was provided.

/ / /

/ / /

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## THIRD COUNT

### Failure to Pay Minimum Wage

### [Cal. Lab. Code §§ 1194, 1197; IWC Wage Order No. 4 § 4]

67.    Plaintiff re-alleges and incorporates by reference all of the preceding paragraphs of this complaint, as though set forth in full at this point.

68.    This cause of action is brought pursuant to Labor Code §§ 1194, 1194.2, 1197, 1197.1, which provide that employees are entitled to minimum wages and compensation for work performed, and provide a private right of action for failure to pay minimum wages for work performed.

69.    Labor Code § 1197 provides: "The minimum wage for employees fixed by the commission is the minimum wage to be paid to employees, and the payment of a less wage than the minimum so fixed is unlawful."

70.    Labor Code § 1194 provides: "Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit."

71.    Labor Code § 1194.2(a) provides: "In any action under … Section 1194 to recover wages because of the payment of a wage less than the minimum wage fixed by an order of the commission, an employee shall be entitled to recover liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon."

72.    As a pattern and practice, Defendants regularly failed to provide Plaintiff and the Class meal periods where they were relieved of their work duties.  As a result, Plaintiff and members of the Class performed worked off-the-clock during their meal periods and therefore, were not compensated for all hours worked, including compensation for minimum wages.

73.    By way of example only, and without meaning to limit the frequency of such events which will be more efficiently identified once discovery has occurred and the Plaintiff has had

access to his time records, in or around the beginning of June 2016, Plaintiff worked approximately 8 hours per shift. Plaintiff worked off-the-clock through his meal periods during that time period and did not receive pay for that time (including, the payment of minimum wages).

74.     Insofar as Defendants failed to pay Plaintiff and the Class Members an amount that was at least the same as the applicable minimum wage, Defendants were and are in violation of the applicable wage and hour laws.

75.     Defendants willfully failed to pay Plaintiff and the Class minimum wages for all hours worked. Defendants' willful failure to provide minimum wages due and owing them upon separation from employment results in a continued payment of wages up to thirty (30) days from the time the wages were due. Therefore, Plaintiff and the Class Members who have separated from their employment are entitled to continuing wage compensation at their regular rate of pay, pursuant to Labor Code § 203.

76.     Plaintiff and the Class are entitled to damages in the sum of unpaid wages, liquidated damages, and the other relief provided by the Labor Code, including interest, attorneys' fees, and costs of suit pursuant to Labor Code § 1194, in an amount according to proof at the time of trial.

## FOURTH COUNT

### Failure to Pay Overtime

### [Cal. Lab. Code §§ 510, 1194, 1198; IWC Wage Order No. 4 § 3]

77.     Plaintiff re-alleges and incorporates by reference all of the preceding paragraphs of this complaint, as though set forth in full at this point.

78.     Under California law, eight hours a day constitutes a day's work. Any work in excess of eight hours a day or 40 hours per week must be compensated at the rate of one-and-one-half times the worker's regular hourly rate. (Labor Code §§ 510(a), 1198 and Part 3 of Wage Order 4).

79.     As a pattern and practice, Defendants regularly failed to provide Plaintiff and the

1    Class meal periods where they were relieved of their work duties.  As a result, Plaintiff and

2    members of the Class were required to work perform during their meal periods, worked off-the-

3    clock during their meal periods, and therefore, were not compensated for all hours worked,

4    including compensation for overtime wages.

5    80.    On average, Plaintiff worked shifts of approximately 8 to 9 hours.  Therefore, when

6    Plaintiff worked during his meal periods and was not compensated for such hours worked, this

7    additional time triggered unpaid overtime compensation that Defendants owed Plaintiff.

8    81.    Plaintiff and the Class regularly worked more than eight hours a day and/or 40

9    hours in a workweek in that they were required to work during their meal periods and were not

10   compensated for such hours worked.

11   82.    Again by way of example only, and without meaning to limit the frequency of such

12   events which will be more efficiently identified once discovery has occurred and the Plaintiff has

13   had access to his time records, in or around the beginning of June 2016, Plaintiff worked

14   approximately 8 hours per shift.  Because Plaintiff also worked off-the-clock through his meal

15   periods during that time period and did not receive pay for that time (including, the payment of

16   minimum wages), the time that Plaintiff worked off-the-clock caused Plaintiff's total hours

17   worked during that period to be in excess of 8 hours per shift.  Therefore, Plaintiff worked

18   overtime hours during that period, but was not paid minimum wages or overtime wages for that

19   time.

20   83.    As a pattern and practice, Defendants regularly failed to pay overtime wages for

21   all hours worked.  Insofar as Defendants failed to pay Plaintiff and the Class Members overtime

22   compensation for all hours worked, Defendants were and are in violation of the applicable wage

23   and hour laws.

24   84.    Defendants willfully failed to pay Plaintiff and the Class overtime wages for all

25   hours worked.  Defendants' willful failure to provide overtime wages due and owing them upon

26   separation from employment results in a continued payment of wages up to thirty (30) days from

27   the time the wages were due.  Therefore, Plaintiff and the Class Members who have separated

28

from their employment are entitled to compensation pursuant to Labor Code § 203.

85.     Plaintiffs and the Class are entitled to recover their unpaid overtime wages, including interest thereon, reasonable attorneys' fees, and costs of suits, pursuant to Labor Code § 1194, in an amount according to proof at the time of trial.

## FIFTH COUNT

### Failure to Pay All Wages Due Upon Discharge

### [Labor Code § 203]

86.     Plaintiff incorporates by reference the preceding paragraphs of this Complaint as though set forth in full.

87.     California law requires that employees whose employment is terminated be paid all wages earned and unpaid, at the time of the worker's separation from the employer. In or around January 2017, Plaintiff separated from Defendants and was not paid all earned and unpaid wages at the time of his termination of employment, including unpaid minimum wages, unpaid overtime, unpaid reporting time wages, and unpaid compensation of one additional hour of pay at the employees' regular rate of compensation, up to a total of two hours pay – one for any number of missed meal periods and one for any number of missed rest periods, for missed meal and rest breaks.

88.     At all times pertinent hereto, Defendants had it within their abilities to capture all time worked and consult their business records and properly calculate and pay all of the said unpaid wages, at the time Plaintiff's employment ended. However, Defendants, and each of them, willfully and intentionally failed and refused to pay the earned and unpaid wages to Plaintiff. Plaintiff alleges, on information and belief, that Defendants have similarly treated the other employees whose employment with Defendants has terminated within the three years prior to the filing of this complaint.

89.     As set forth above, Defendants had knowledge that Plaintiff and the Class Members did not receive legally-compliant meal and rest periods because Plaintiff raised concerns to his managers and to Defendants' HR department regarding not receiving compliant

breaks.  In addition, Defendants had knowledge of its own practices and policies of understaffing its branches.

90.    Although Plaintiff's concerns were directly addressed by him to Defendants regarding understaffing, lack of coverage, and employees not receiving compliant breaks, Defendants dismissed those complaints.  Specifically, when Plaintiff raised concerns to Ms. Wasserman of Defendants' HR department that he was not receiving compliant meal periods, HR told Plaintiff that they would get back to him regarding his inquiry about interrupted meal periods. However, Plaintiff did not hear back from Defendants.  In addition, when the concern regarding understaffing and lack of coverage was raised to Defendants during manager conference calls, district managers stated that "this is the staff that you get," and "this is the way Bank of America is moving," or words to that effect.

91.    Despite Plaintiff's complaints to Defendant about non-compliant meal and rest periods, Plaintiff continued to experience non-compliant meal and rest periods when he was transferred to the Clayton, California branch.  Based on the directions that Plaintiff had received from his managers, Tenisha Donaville and Amanda Velasco/Quiroz, about taking his meal and rest periods on the bank's premises and performing work during his meal and rest periods, Plaintiff felt that he had no choice but to perform work during his meal and rest periods during the beginning and middle of June 2016, where Plaintiff's meal and rest periods were interrupted as a result of assisting other employees with transactions.  Therefore, Defendant had knowledge of its own pattern and practice of not providing compliant meal and rest periods to Plaintiff and the Class, and requiring Plaintiff and the Class to remain on the bank's premises to perform work during their meal and rest periods.   Despite Defendants' knowledge that Plaintiff and the Class did not receive compliant meal and rest periods, Defendants failed to pay Plaintiff and the Class one additional hour of pay at the employees' regular rate of compensation for each workday that the meal or rest period was not provided, up to a total of two hours pay – one for any number of missed meal periods and one for any number of missed rest periods.

92.    Defendants also failed to pay Plaintiff and the Class minimum wages and overtime

wages as a result of Plaintiff and the Class working off-the-clock during their meal periods, even though Defendants instructed Plaintiff and the Class to remain on the premises during their breaks in order to perform work.

93.    Plaintiff did not hide himself, or in any manner refuse or obfuscate any attempt by Defendants to tender the balance of the earned and unpaid wages. Plaintiff alleges, on information and belief, that the same is true of the other employees whose employment with Defendants has terminated within the three years prior to the filing of this complaint.

94.    Pursuant to California law, Plaintiff and the other Class Members whose employment has terminated within the last three years, are entitled to a penalty equal to their regular daily rate, up to a maximum of 30 days.

### SIXTH COUNT

### Failure to Reimburse for Business Expenses

### [Cal. Lab. Code § 2802]

95.    Plaintiff incorporates by reference the preceding paragraphs of this Complaint as though set forth in full.

96.    Under California Labor Code § 2802, employees are entitled to be indemnified "for all necessary expenditures or losses incurred by them in direct consequence of the discharge of their duties."

97.    Bank of America has failed to reimburse Plaintiff and members of the Class for their ordinary business expenses that were incurred on behalf of and for the benefit of Bank of America including but not limited to cell phones and other expenses to be determined in discovery.

98.    Defendant required Plaintiff and members of the Class to use their personal cellular phones both during and outside of their work shifts in order to communicate with other Bank of America employees.  In particular, Defendant instructed Plaintiff and members of the Class to use their personal cellular phones during work hours in order to communicate with their managers regarding status updates, emergencies, and/or any other work-related purposes, such as

communicating with employees regarding scheduling or answering questions that Plaintiff's managers and/or other employees had.

99.    Again by way of example only, and without meaning to limit the frequency of such events, in or around end of 2015 or beginning of 2016, Plaintiff's managers were trying to contact Plaintiff on his personal cellular phone because employees needed access to his keys and to his code in order to access the bank vault. When Plaintiff was unable to respond immediately, Plaintiff's manager became upset at Plaintiff, questioning him with regards to his whereabouts and why he was unable to answer their attempts to reach him on his cellular phone. As a result, Plaintiff was caused to reasonably believe that he had no choice but to keep his personal cellular phone on his person during all of his work hours and to respond to text messages and phone calls received from other Bank of America employees.

100.    Plaintiff and the Class were also required to use their personal cellular phones outside of their work shifts in order to communicate with other employees. Plaintiff's and the Class' managers would contact and communicate with Plaintiff and the Class on their personal cellular phones regarding work-related items, including, but not limited to, scheduling, status updates, pending documentation, pending training, and approving timesheets for employees, among other items.

101.    On one occasion, on or about November 27, 2015, Plaintiff notified his manager that he was not feeling well and would be taking a sick day. Not only did Plaintiff's manager express her discontentment at Plaintiff taking a sick day, but Plaintiff's manager continued text messaging Plaintiff about work. For example, Plaintiff's manager told Plaintiff that the branch was "understaffed," or words to that effect. Plaintiff's manager also said that "you will have to be here for the meeting. No exceptions," or words to that effect. Plaintiff's manager also texted Plaintiff that day, inquiring about the location of a cash box, even though Plaintiff told his manager that he was not feeling well and was taking a sick day off from work. Plaintiff shared screen shots of these text messages with Bank of America's HR department.

102.    Bank of America had knowledge of Plaintiff and other Class Members being

required to use their personal cellular phones during and outside of their work shifts because Plaintiff and other Class Members had to use their personal cellular phones to communicate with their managers regarding work-related matters, as set forth herein (per Defendants' instructions to them).  In addition, Bank of America had knowledge of these business-related expenses because Plaintiff shared screen shots of his work-related text messages with Bank of America's HR department.

103.  Despite Bank of America having direct knowledge of Plaintiff and the Class incurring business-related expenses by using their personal cellular phones for work, Bank of America never reimbursed Plaintiff and the Class for the use of their personal cellular phone and/or data usage, in violation of Labor Code § 2802.

104.  Plaintiff and members of the Class are, therefore, entitled to be indemnified, pursuant to Labor Code § 2802(b), with interest at the statutory rate, plus attorneys' fees, penalties, and costs.

## SEVENTH COUNT

### Unfair Competition

### [Business & Professions Code § 17200, *et. seq.*]

105.  Plaintiff incorporates by reference the preceding paragraphs of this Complaint as though set forth in full.

106.  Defendants' failure to provide lawful meal breaks, authorize and provide lawful rest breaks, failure to pay one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest period was not provided, up to a total of two hours pay – one for any number of missed meal periods and one for any number of missed rest periods, and failure to pay compensation for all hours worked, including minimum wages and overtime wages, constitutes an unlawful and unfair business practice under Bus. & Prof. Code § 17200, et seq., as it violates the provisions of the Labor Code and Wage Order No. 4 as described above.

107.  Defendants' conduct described herein is "unfair" under Bus. & Prof. Code

§ 17200 because it is immoral, unethical, oppressive, unscrupulous, and/or substantially injurious, and any utility of such practices is outweighed by the harm caused to the Plaintiff, the Class, and the public.

108.    Defendants' employment practices were also unfair because they undermine California's wage and hour laws, which reflect the strong public policy favoring protection of workers' general welfare and society's interest in a stable job market.

109.    The gravity of harm Defendants' employment practices places on its employees substantially outweighs any utility, reasons, justifications, and motives Defendants can provide for these practices.

110.    Defendants' wrongful conduct is ongoing and part of a pattern or generalized course of conduct repeated on thousands of occasions yearly.

111.    By and through their unfair and unlawful business practices described herein, Defendants have obtained valuable property, money, and services from Plaintiff, members of the Class, and the general public, and have deprived them of valuable rights and benefits guaranteed by law, all to their detriment.

112.    Plaintiff seeks order requiring Defendants to make full restitution and to disgorge their ill-gotten gains wrongfully obtained from members of the Class as permitted by Bus. & Prof. Code § 17203.

113.    Additionally, Plaintiff and the Class members seek an order requiring Defendants to pay attorneys' fees pursuant to Cal. Civ. Code § 1021.5.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment for himself and all others on whose behalf this suit is brought against Defendants, jointly and severally, and for an Order follows:

a)    certifying the proposed Class defined herein;

b)    appointing Plaintiff as Class Representative;

c)    appointing Plaintiff's counsel as Class Counsel;

d)    declaring Defendants' conduct to be unlawful;

e)   awarding compensatory damages in an amount according to proof with interest thereon

f)   On the First Count, for damages and/or penalties, as provided by law, in an amount according to proof at the time of trial;

g)   On the Second Count, for damages and/or penalties, as provided by law, in an amount according to proof at the time of trial;

h)   On the Third Count, for damages and/or penalties, as provided by law, in an amount according to proof at the time of trial;

i)   On the Fourth Count, for damages and/or penalties, as provided by law, in an amount according to proof at the time of trial;

j)   On the Fifth Count, for all earned wages due and owing at the time of separation from Defendants, plus waiting time penalties, pursuant to Labor Code § 203, according to proof at the time of trial;

k)   On the Sixth Count for reimbursement of all necessary business expenses advanced by Plaintiff and the Class members, in an amount according to proof at the time of trial;

l)   On the Seventh Count, for restitution to Plaintiff and other similarly situated members of the general public of all funds unlawfully acquired by Defendants by means of any acts or practices declared by the Court to be in violation of Bus. & Prof. Code §§ 17200 *et seq.*;

m)   awarding penalties and all available relief pursuant to the Labor Code and Wage Order No. 4;

n)   liquidated damaged as provided by Labor Code § 1194.2;

o)   awarding attorneys' fees and costs as provided by Labor Code §§ 218.5, 1194, 2802, and Code of Civil Procedure § 1021.5; and

p)   granting such other and further relief as this Court deems just and proper.

/ / /

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests a trial by jury for all matters so triable in this action.


Dated:  October 21, 2019                    **MARLIN & SALTZMAN, LLP**



By:   /s/ Tatiana G. Avakian
                        Stanley D. Saltzman, Esq.
                        Bradley R. Fagnani, Esq.
                        Tatiana G. Avakian, Esq.
                        Attorneys for Plaintiff and the Class

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>CERTIFICATE OF SERVICE</u>

I, Tatiana G. Avakian, an attorney, certify that I caused the foregoing document to be served on all counsel of record in this action via the Court's CM/ECF system on October 21, 2019.


By: <u>  /s/ Tatiana G. Avakian          </u>
Tatiana G. Avakian, Esq.
*Attorney for Plaintiff and the putative Class*